47 F.3d 1173
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Irene HUGHES, on Behalf of Donald HUGHES, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-1882.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 9, 1995.[1]
Decided Feb. 13, 1995.
 
 Before BAUER, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Irene Hughes, on behalf of her son, Donald Hughes, now deceased, appeals from a district court order affirming the Secretary's determination denying all supplemental security income and disability insurance benefits. Hughes's application for benefits alleged disability since June 23, 1987, caused by radiation cancer treatment when he was two years old, resulting in kyphoscoliosis of the spine, pulmonary fibrosis, asthma, and other pulmonary impairments including radiation pneumonitis.
 
 
 2
 An ALJ found that Hughes was not entitled to benefits because he retained the residual functional capacity to perform the full range of sedentary work, with certain restrictions. The Appeals Council remanded for further evaluation of claimant's complaints of pain, and further consideration of the opinions of the treating sources, along with additional rationale as to the weight given to the opinion evidence, and additional testimony from a vocational expert. After the supplemental hearing was held, the ALJ again found Hughes was not entitled to benefits. The Appeals Council adopted the ALJ's findings. The district court granted the Secretary's motion to affirm.
 
 
 3
 Hughes contends on appeal to this court that the Secretary improperly rejected the treating physicians' findings; and failed to properly apply Social Security Ruling 88-13 regarding a third party's testimony describing symptoms of pain suffered by claimant. For the reasons stated in the attached district court Memorandum Opinion and Order dated February 12, 1993, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 4
 Irene Hughes, on behalf of Donald Hughes, deceased, Plaintiff,
 
 
 5
 v.
 
 
 6
 Louis W. Sullivan, Secretary of the Department of Health and
 
 
 7
 Human Services, Defendant.
 
 Case No. 92 C 5487
 DOCKETED FEB 17, 1993
 MEMORANDUM OPINION AND ORDER
 MARVIN E. ASPEN, District Judge:
 
 8
 Plaintiff Irene Hughes ("plaintiff") on behalf of Donald Hughes ("Hughes"), now deceased, brings this action for judicial review of a final determination by the defendant Louis W. Sullivan, M.D., Secretary of Health and Human Services ("Secretary"), that plaintiff is not entitled to a period of disability and disability benefits under the Social Security Act. Plaintiff seeks summary judgment in her favor, or, in the alternative, for remand of this matter. For the reasons set forth below, we deny her motion.
 
 I. Standard of Review
 
 9
 Under the Social Security Act, a reviewing court must sustain the Secretary's findings if they are supported by substantial evidence. 42 U.S.C. Sec. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pitts v. Sullivan, 923 F.2d 561, 564 (7th Cir.1991), quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This Court will not substitute its own judgment for that of the Secretary, or undertake to decide facts or weigh evidence anew. Scivally v. Sullivan, 966 F.2d 1070, 1075 (7th Cir.1992).
 
 II. Factual Background
 
 10
 Hughes was born in 1962, and, as a child, had a cancerous neuroblastoma--a tumor generally affecting small children--removed from his spine. Following the surgery, Hughes underwent radiation therapy. Ultimately, the cancer was eradicated.
 
 
 11
 During, and after, high school, Hughes lived at home and held down various jobs. From 1977 to 1989, he was a maintenance worker at McCormick Place. From 1980 to January, 1987, he labored full-time as a landscaper for the Chicago Park District, while working part-time as a forklift operator at McCormick Place. Due to his physical impairments, Hughes escaped the more strenuous requirements of these occupations.
 
 
 12
 Due to his early surgery, Hughes developed a form of scoliosis, or curvature of the spine. The scoliosis, in turn, limited the capacity of his right lung. In addition, his radiation treatment created a condition of pulmonary fibrosis and asthma. As a result of these conditions, Hughes was hospitalized on a number of occasions.
 
 
 13
 In 1987 and 1988, St. Margaret Hospital admitted Hughes with signs of asthma and an upper respiratory tract infection. On both occasions, Dr. Cynthia Sanders treated Hughes. She put him on medication, to which he responded quickly and favorably. Dr. Sanders treated Hughes for two years, and prescribed valium for regular use.[1]
 
 
 14
 Over the course of the next year, several doctors examined Hughes. Drs. Fitzsimons, Kevin, and Tamrogouri all took chest x-rays, which revealed no abnormalities, and all diagnosed some form of asthma.
 
 
 15
 For health reasons, Hughes visited Arizona in 1989. While there, the Marcus J. Lawrence Memorial Hospital admitted him for an acute asthma attack brought on by a bronchial infection. Drs. Ian G. Becke and J.E. Arnold each found that Hughes' air entry was diminished in both lungs. Dr. Arnold further diagnosed pneumonia in the lower lobe of Hughes' right lung. Upon treatment and medication, Hughes recovered within forty-eight hours. After his discharge, Dr. Becke treated Hughes one more time for pain in his right chest and shortness of breath.
 
 
 16
 On May 3, 1989, Hughes filed an Application for Disability Benefits, alleging that he had been disabled since 1987. After having his application twice denied, Hughes requested a hearing before an administrative law judge ("ALJ"). On February 4, 1990, before a hearing was held, Hughes committed suicide. Decedent's mother, the plaintiff in this action, continued the claim.
 
 
 17
 After a July, 1989 hearing, ALJ Edward Gustafson denied the claim. Upon receiving plaintiff's request for review of the denial, the Appeals Council remanded the claim to the ALJ and instructed him to:
 
 
 18
 w Consider the opinions from the treating sources and provide appropriate rationale as to the weight accorded such opinion evidence in accordance with the new standards concerning consultative examination and existing medical evidence published in the Federal Register on August 1, 1991 (56 FR 36952).[2]
 
 
 19
 w Evaluate the claimant's complaints of pain in accordance with the criteria described in Social Security Ruling 88-13.
 
 
 20
 wObtain evidence from a vocational expert in order to determine the effect of the claimant's exertional and nonexertional limitations on his occupational base (Social Security Ruling 83-14).
 
 
 21
 Exh. 32, p. 2.
 
 
 22
 On November 20, 1991, the ALJ held a second hearing. Included in this hearing were reports from decedent's treating physicians. First, Dr. Sanders, who treated decedent for two years, submitted a two-page written report along with a Physical Capacities Evaluation Form. In her written report, Dr. Sanders stated that decedent "was unable to do heavy lifting, walk for prolonged periods, climb stairs or withstand exposure to temperature changes and dusty environments." Trans. at p. 211. In the evaluation form, she indicated that Hughes could not lift or carry anything over five pounds, could not stand or sit for longer than half an hour, and that his work capacity was less than sedentary.
 
 
 23
 Dr. Becke also submitted a report in 1990 regarding Hughes' physical condition and work capacity. In his written summary, Dr. Becke stated that he would "recommend, at the time of his stay in Arizona, that [Hughes] be considered completely disabled permanently." In completing the Physical Capacities Evaluation Form, Dr. Becke indicated that Hughes could not carry anything over 10 pounds, lift anything over 20 pounds, and that his work capacity was less than sedentary. Trans. at pp. 191-94.
 
 
 24
 Dr. Julian Freeman, a medical expert, reviewed the medical evidence available, which included Dr. Becke and Dr. Arnold's reports and the medical records from Lawrence Hospital, but did not include Dr. Sanders' report or evaluation. In September, 1990, Dr. Freeman submitted a letter in which he opined that Hughes suffered from moderately severe kyphoscoliosis, pulmonary fibrosis, and asthma. Dr. Freeman concluded that Hughes would have been capable of sedentary work, as long as he used a protective respiratory mask when exposed to irritants.
 
 
 25
 Finally, a vocational expert testified at the hearing and answered several hypothetical questions. First, in response to a hypothetical based on Dr. Freeman's testimony, the expert testified that there were three sedentary occupations that did not involve exposoure to irritants or temperature changes which Hughes could have performed. These occupations represented about 14,000 jobs in the Chicago area. Next, plaintiff's attorney posed a similar hypothetical, but added factors such as pain, addiction to valium, and concentration difficulties. To this hypothetical, the expert replied that no jobs would be suitable.
 
 
 26
 At the end of the hearing, ALJ Gustafson again denied plaintiff's claim. Plaintiff appealed this decision, claiming that the ALJ abused his discretion, made an error of law, and made findings which were not supported by substantial evidence. The Appeals Council affirmed the ALJ's determination, concluding "that there is no basis under the above regulations for granting [the] request for review," and the Secretary denied disability benefits. Trans. at p. 3.
 
 
 27
 Plaintiff now moves this court to review the Secretary's final determination and grant summary judgment in her favor.
 
 III. Discussion
 
 28
 In her motion, plaintiff raises three issues. She argues that defendant (1) improperly evaluated evidence relating to Hughes' pain, (2) improperly rejected the treating physicians' findings, and (3) failed to consider the effects of Hughes' non-exertional impairments on his ability to work. We address each of these arguments in turn.
 
 A. Evidence of Pain
 
 29
 On remand, the ALJ was specifically directed to consider evidence of Hughes' pain in compliance with Social Security Ruling 88-13. The Ruling provides that
 
 
 30
 [i]n evaluating a claimant's subjective complaints of pain, the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function.
 
 
 31
 Plaintiff claims that the ALJ failed to meet this standard. We disagree.
 
 
 32
 In attempting to comply with Ruling 88-13, ALJ Gustafson evaluated the available evidence. First, he considered the various medical reports. While the reports provide evidence of conditions which might cause pain, none of the reports expressly discuss the level of Hughes' pain on a daily basis.
 
 
 33
 Second, unable to consider the testimony of the Hughes himself, the ALJ considered the testimony of Hughes' father. However, due to the father's financial interest in the case and the hearsay nature of the testimony, he refused to give the father's testimony any significant weight.[3] Such a credibility determination is well within the ALJ's purview, and, absent clear evidence of error, we will not disturb it. See Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir.1989).
 
 
 34
 Because the ALJ considered the available evidence regarding pain, and gave reasonable explanations for its weight, he has complied with Ruling 88-13.
 
 B. Treating Physicians' Evaluations
 
 35
 Plaintiff also claims that the ALJ failed to properly consider the opinions of Hughes' treating physicians. Although both Dr. Sanders and Dr. Becke concluded that Hughes could not perform even sedentary work, the ALJ, relying on Dr. Freeman's report, found Hughes capable of sedentary work, as long as it did not involve exposure to pulmonary irritants or temperature changes. Plaintiff charges that Dr. Freeman's report, opposed as it is to the examining physicians' opinions, does not constitute substantial evidence on which to base the Secretary's finding of no disability.
 
 
 36
 Generally, the Secretary will give more weight to a treating physician's opinion than to the opinion of a doctor who has not examined the claimant. 20 C.F.R. Sec. 404.1527(d)(1). See also Grindle v. Sullivan, 774 F.Supp. 1501 (N.D.Ill.1991). The weight given to such opinions, however, can be affected by the length of the treatment relationship, the nature and extent of the treatment relationship, and the degree to which the opinion is supported by the medical evidence. Id. If an ALJ decides to reject medical evidence offered by a treating physician, he must offer reasons for his decision. See Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir.1992) ("The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability."). In this case, the ALJ favored the opinion of the non-examining expert, Dr. Freeman, over Dr. Sanders' work capacity evaluation and both Dr. Becke's written opinion and work capacity evaluation. The ALJ explained his decision with respect to each of the examining doctors.
 
 
 37
 Regarding Dr. Becke, the ALJ observed that the physician had only treated Hughes for one month while the decedent was in Arizona. Moreover, the ALJ concluded that by recommending "at the time of his stay in Arizona, that [Hughes] be considered completely disabled permanently," Dr. Becke was limiting his recommendation to the period when Hughes was in Arizona. Although we may have drawn a different inference from Dr. Becke's language, the ALJ has cited the brevity of the doctor's treatment, along with the doctor's caveat, as his reasons for giving the evaluation little weight, and these reasons find support in the record.
 
 
 38
 Having expressly acknowledged that Dr. Sanders' Physical Capacities Evaluation Form contradicts his finding, the ALJ explained his decision to reject the evaluation. In her written report, Dr. Sanders stated that Hughes could not do "heavy lifting, walk for prolonged periods, climb stairs, or withstand exposure to temperature changes and dusty environments." Along with the written report, Dr. Sanders filled out the evaluation form, in which she concluded that Hughes was not capable of even sedentary work, and further indicated that Hughes could not lift or carry more than five pounds and could not stand or sit for longer than half an hour at a time. The ALJ found Dr. Sanders' written report to be consistent with Dr. Freeman's findings that Hughes could perform sedentary work, and, therefore, that it was internally inconsistent with the evaluation form, which denied such capability. Consequently, the ALJ rejected the evaluation form, stating that "it is impossible to reconcile with her written opinion." Trans. at pp. 11-12.
 
 
 39
 Read in isolation, Dr. Sanders' written report could support the inference that Hughes was capable of sedentary work, as found by Dr. Freeman. However, the evaluation form was submitted in conjunction with the written report, and the two must be read together. Notably, there is nothing in the evaluation which contradicts the written report. Instead, the evaluation merely clarifies the meaning of "heavy lifting" and "prolonged periods." Accordingly, the evidence does not support the ALJ's decision to disregard Dr. Sanders' Physical Capacities Evaluation Form. See Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir.1992) (court found that different formats of two medical reports, one being more general than the other, accounted for apparent inconsistencies between them, and held that the evidence did not support the ALJ's decision to reject the treating physician's reports as "totally in contradiction with each other.").
 
 
 40
 Although the ALJ erred in disregarding the evaluation form filled out by Dr. Sanders, the question before us is whether the ALJ's finding nonetheless is supported by substantial evidence.[4] We believe that it is.
 
 
 41
 The ALJ based his finding in large part upon the opinion of the non-examining expert, Dr. Freeman. Dr. Freeman's opinion was based on the medical exhibits available at the time, which included the medical reports of Dr. Becke and Dr. Arnold, as well as hospital records from Lawrence Memorial Hospital, but did not include Dr. Sanders' report or evaluation. However, in several important respects, Dr. Freeman's opinion comports with the medical evidence compiled by the examining physicians. First, as the ALJ pointed out, Dr. Sanders' written report supports Dr. Freeman's written assessment of Hughes' medical history and condition. Second, Dr. Freeman relied on Dr. Becke's assessment of Hughes' lifting and carrying capacity. While Dr. Becke's assessment differs from Dr. Sanders', it is notable that Dr. Becke examined Hughes more recently than Dr. Sanders. Accordingly, because there is record support for Dr. Freeman's opinion, a reasonable mind might accept Dr. Freeman's opinion as adequate to support a finding of no disability.
 
 C. Vocational Expert's Testimony
 
 42
 Finally, plaintiff contends that the ALJ improperly failed to consider the vocational expert's testimony in answer to plaintiff's hypothetical. While the ALJ posed a hypothetical question, based on Dr. Freeman's opinion, about what work would have been available to Hughes, and was told that three jobs existed, the plaintiff submitted a hypothetical which included the presence of concentration deficiencies, valium addiction, pain, and shortness of breath, and was told that no jobs were available.
 
 
 43
 While it is true that the ALJ does not mention the expert's response to the plaintiff's hypothetical, there is substantial evidence supporting Dr. Freeman's opinion--the basis of the considered hypothetical--and little, or no, evidence supporting the existence of the additional factors mentioned in the plaintiff's hypothetical. For example, although plaintiff persists in claiming that Hughes was addicted to valium, the plaintiff cannot point to any medical evidence of addiction, and Hughes' own father testified that the decedent was not addicted to any drug. Accordingly, substantial evidence supports the ALJ's determination that Hughes could have performed a significant number of jobs in the Chicago area.
 
 IV. Conclusion
 
 44
 For the foregoing reasons, we deny plaintiff's motion for summary judgment, and, accordingly, uphold the final determination of the Secretary denying plaintiff benefits under the Social Security Act. It is so ordered.
 
 
 45
 /s/ Marvin E. Aspen
 
 Marvin E. Aspen
 United States District Judge
 Dated 2/12/93
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted for decision on the briefs and the record
 
 
 [1]
 Plaintiff claims that Hughes was addicted to valium. In 1987, the pharmacy called Dr. Sanders, suspicious that her signature had been altered on the prescription. In May, 1988, the store noted that the prescription amount had been changed from 5 mg to 10 mg. In June, 1988, Dr. Sanders informed Hughes that he should taper off valium. Later, however, she again prescribed the drug. Moreover, when asked, under oath, Hughes' father testified that Hughes was not addicted to any drug
 
 
 [2]
 The content mentioned here is contained in 20 C.F.R. Sec. 404.1527
 
 
 [3]
 Plaintiff contends that the ALJ did not consider the letter written by Hughes' mother describing his pain. However, the ALJ need not track down and discuss every piece of evidence submitted during a hearing, moreover there is no reason to believe that he would have afforded the mother's letter any more weight than the father's testimony
 
 
 [4]
 This question encompasses the fact that not only should the ALJ have considered Dr. Sanders' evaluation form, but he should have given it more weight than the non-treating physician's testimony. 20 C.F.R. Sec. 404.1527(d)(1). Accordingly, by "substantial evidence," we mean sufficient evidence that a reasonable mind might accept the ALJ's reliance on Dr. Freeman's opinion in light of the fact that Dr. Sanders' competing opinion should have been considered and given extra weight